GAIL SHIFMAN, ESQ., Cal State Bar No. 147334
LAW OFFICE OF GAIL SHIFMAN
2431 Fillmore Street
San Francisco, CA  94115
Telephone:	(415) 551-1500
Email:	gail@shifmangroup.com

Attorney for Defendant
RICCI LEE WYNNE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. CR 19-0120 CRB (SK) |
| Plaintiff, | ) |
| v. | ) **DEFENDANT'S MEMORANDUM** |
| | ) **IN SUPPORT OF DISCOVERY** |
| RICCI LEE WYNNE, | ) |
| Defendant. | ) |

Defendant Ricci Lee Wynne, by and through his counsel of record, Gail Shifman files this memorandum regarding the government's obligation to produce discovery to comply with the defendant's right to due process.

Defendant Wynne is charged with three violations of his supervised release in a Form 12, dated November 26, 2024, Dkt. 53. The violations are described as follows.

Charge One	There is probable cause to believe that the person under supervision violated the mandatory condition which states that he must not commit another federal, state, or local crime.

On or about February 2022 through August 2022, Mr. Wynne violated California Penal Code(s) 261.5(d) – Statutory Rape, a felony; and 287(b)(C) – Oral Copulation with a Minor, a felony.

**DEFENDANT'S MEMORANDUM**
**IN SUPPORT OF DISCOVERY**                                                                                        **1**

On November 25, 2024, the Probation Office received San Francisco Incident Report Number 24-729-179, which identified Mr. Wynne as the suspect of a sexual assault of a 15-year-old victim. San Francisco police Sargent Robert Glenn confirmed Mr. Wynne is being investigated for the above-mentioned new law violations. **San Francisco Police Department Incident Report Number** 220-627-010, **has been requested**. [Emphasis added.]

Evidence in support of this charge is contained in the San Francisco Police Department Incident Report Number 240-729-179.

Charge Two   There is probable cause to believe the person under supervision violated the mandatory condition which states that he must not commit another federal, state, or local crime.

On or about November 25, 2024, Mr. Wynne violated California Penal Code(s) 266h(a)- Pimping, a felony; and 266i(a)(1)- Pandering by Procuring, a felony.

On November 24, 2024, at approximately 20:50 hours, Mr. Wynne and his girlfriend were detained by San Francisco Police Officers and Homeland Security Investigation at San Francisco International Airport as part of an ongoing investigation. Several cell phones were located belonging to Mr. Wynne. He provided the passcodes that allowed officers access to these devices. **Mr. Wynne's involvement in pimping and pandering was well documented on these devices.** Mr. Wynne was often using his reported residence as a location for in calls. [Emphasis added.]

A search was conducted by San Francisco police officers at Mr. Wynne's reported residence. $79,900 in U.S. currency was in a bag in the closet, along with a passport and a California ID belonging to Mr. Wynne. An additional cellphone was located under the bed.

Evidence in support of this charge is contained in the San Francisco Police Department Incident Report Number 240-729-179.

Charge Three   There is probable cause to believe that the person under supervision violated standard condition number four which states he must follow the instructions of the probation officer.

Mr. Wynne was approved to travel to Miami, Florida on November 19, 2024, returning no later than November 23, 2024. On or about November 23, 2024, Mr. Wynne changed his fight to return a day later without seeking permission from the probation office.

Evidence in support of this charge is contained in the San Francisco Police Department Incident Report Number 240-729-179.

On December 2, 2024, at the initial appearance on the Form 12, the Court ordered the production of discovery, Dkt. 55.  On the same date, the probation officer produced only one item of discovery, San Francisco Police Department Incident Report Number 240-729-179, attached as Exhibit A, sealed, for the Court's review.  The incident report is labeled, "Probation Search" dated November 19, 2024, and as the report indicates a joint investigation of Mr. Wynne was conducted by the SFPD with the United States Probation Office, and United States Homeland Security Investigations.  Exhibit A, pp. 6,7.  The report references a number of other incident reports, report # 220-627-010, among them. *Id.* None of the other incident reports have been produced.

On November 19, 2024, Mr. Wynne was only on supervised release, and the labeling of the report as "Probation Search" is reference to a supervised release search being conducted by the SFPD at the behest of the United States Probation Office who had advised SFPD of the expanded search conditions of Mr. Wynne's supervised release including the requirement that he "provide all passwords to his devices". *Id.* at 7.  A number of cell phones and electronic devices were seized from Mr. Wynne and his traveling companion. *Id.* The report references text messages that allegedly are related to prostitution none of which contain material requiring a protective order to produce. *Id*. The report does not detail whether the messages were allegedly written by Mr. Wynne or someone else.  Additionally, the report indicates that the text messages appear to be written to Mr. Wynne's traveling companion and not Mr. Wynne, raising inferences that the text messages contain *Brady* material. *Id.* The report references information reviewed by the writer of the report from the various SFPD incident report numbers listed in the report. *Id.*

The report indicates that body-worn cameras were activated for the search of Mr. Wynne's residence. *Id.* During the search of Mr. Wynne's residence, his traveling companion arrived home to her residence and told the officers that "she is not a victim of human trafficking" and that "Mr. Wynne is not her pimp." *Id.* Screen shots were taken of text messages on at least one of the phones seized and

transferred to a CD. *Id.* Google searches were conducted, *Id.,* the results of which were undoubtedly chronicled in a report or Chronology, which SFPD maintains as a part of their work, and which are routinely produced in discovery when SFPD is involved in an investigation.

The report indicates that Mr. Wynne was interviewed and made statements. *Id.* This interview may have been recorded as many, if not most, of these interviews are recorded. A report of his full interview is likely contained within a supplemental report and/or the Chronology and/or on audio or video recordings. Numerous documents were seized as a part of the supervised release search. *Id.*

In response to the Court's Order to produce discovery, having produced only Exhibit A which can best be described as a summary report, at the second calling of this case on December 4, 2024, Mr. Wynne objected to the government's failure to produce discovery adequate to his due process rights to defend himself and the resulting 6th Amendment violation of his right to effective representation. The probation officer claimed possession of only Exhibit A stating that nothing additional could be produced while further violating Mr. Wynne's due process rights by asserting that videos of child pornography had been viewed on seized phones without producing any reports detailing a description of the videos.[1] During the hearing, the Court was not told any details concerning the age of the alleged victim, who may be a young woman rather than a child, whether that person had been identified, or what was depicted. Without further information, Mr. Wynne is left unable to address a subjective statement about what was viewed on a phone, and the Court is left with innuendo rather than actual facts.

This one incident report makes clear that the investigation of Mr. Wynne resulting in the Form 12 has been conducted jointly and cooperatively between federal and state law enforcement. The Form 12 itself makes clear that the probation officer can obtain SFPD incident reports by requesting their production. *See,* Dkt. 53, Charge One, Emphasis added portion. That the probation officer produced

---
[1] Any alleged child pornography would require a protective order for their viewing by defense counsel. Despite counsel agreeing to a protective order, as of this writing, the government has not provided one. Nor has the government advised which SFPD officer or detective to contact for reviewing of the videos or images.

**DEFENDANT'S MEMORANDUM
IN SUPPORT OF DISCOVERY**      **4**

Exhibit A, an SFPD Incident Report, is evidence of the ease in which a request for copies of SFPD documents produces results.

Defendant seeks discovery of all of the SFPD incident reports referenced in Exhibit A. He seeks production of the SFPD Chronologies which SFPD produces in conjunction with the incident reports. In addition, he seeks all body worn camera video footage, all audio recordings, all photographs, screen shots and Cellbrite reports of the cell phones (and other electronic devices) seized which will include all text messages, emails, photographs, videos, and voice mails contained therein. He requests production of all Homeland Security reports related to these charged violations and the probation department's own references from their case file to the alleged violations. Notably, the probation officer didn't even produce the underlying final Presentence Report from this case, routinely provided in all Form 12 proceedings. To provide due process, this discovery must be produced prior to both the probable cause hearing[2] and the revocation hearing.

Federal Rule Criminal Procedure 32.1 governs supervised release violation hearings. In *Morrisey v. Brewer*, 408 U.S. 471 (1972), and by extension in *Gagnon v. Scarpelli*, 411 U.S. 788 (1973), the Supreme Court held that a defendant must be accorded a minimum of due process before his parole or probation can be revoked. Fed. R. Crim. P. 32.1, added in 1979, incorporates the Court's requirements.[3]

Rule 32.1 makes clear that due process requires that the defendant has the right to effective counsel, that he is entitled to disclosure of the evidence against him, an opportunity to present evidence and an opportunity to question opposing witnesses. Rule 16 discovery applies, as it is not excluded by Fed. R. Crim. P. 1, as do *Brady* obligations, as well as the *Jencks* Act (Rule 32.1(c) provides for the

---

[2] Mr. Wynne seeks the setting of a probable cause hearing date.

[3] *See* Robert McClendon, *Supervising Supervised Release: Where the Courts Went Wrong on Revocation and How* United States v. Haymond *Finally Got It Right*, 54 TULSA L. REV. 175, 186 (2018); *see, e.g.*, *United States v. Hall*, 419 F.3d 980, 985 n.4 (9th Cir. 2005) ("Parole, probation, and supervised release revocation hearings are constitutionally indistinguishable and are analyzed in the same manner.").

application of Fed. R. Crim. P. 26.2, concerning witness statements, to revocation proceedings.)

A Form 12 seeking to detain a defendant and likely seeking a sentence of imprisonment upon a finding of a violation must not be filed while a probation officer hides discovery obligations by throwing hands up in the air claiming lack of possession of evidence and discovery. Exhibit A itself shows the joint nature of the investigation of the supervised release violations alleged against Mr. Wynne. Moreover, the government whether through the AUSA or through the probation officer can easily request that these reports, Chronos, and evidence be provided to them, as Exhibit A itself demonstrates.

The prosecutor as the attorney prosecuting the Form 12 for the probation office has its own obligations. The United States Attorney's Manual 9-5.002 – Criminal Discovery describes the role and duties of the prosecutor in producing discovery,

> **Step I: Gathering and Reviewing Discoverable Information**
> "Discovery" or "discoverable information," and the duty to search for it, includes information required to be disclosed by Fed.R.Crim.P. 16 and 26.2, the Jencks Act, *Brady*, and *Giglio*, and additional information disclosable pursuant to this policy.
>
> **A. Where to look: The Prosecution Team**
> JM 9-5.001 states, in part:
>
> This search duty also extends to information prosecutors are required to disclose under Federal Rules of Criminal Procedure 16 and 26.2 and the Jencks Act.
>
> Many cases arise out of investigations conducted by multi-agency task forces or otherwise involving state law enforcement agencies. In such cases, prosecutors should consider (1) whether state or local agents are working on behalf of the prosecutor or are under the prosecutor's control; (2) the extent to which state and federal governments are part of a team, are participating in a joint investigation, or are sharing resources; and (3) whether the prosecutor has ready access to the evidence..
>
> Prosecutors are encouraged to err on the side of inclusiveness when identifying the members of the prosecution team for discovery purposes.

The Due Process Protections Act mandates that prosecutors comply with their constitutionally mandated disclosure obligations. Where we know, as we do here, that it appears that text messages have been exchanged between people other than Mr. Wynne, and where one of the people texting in those

**DEFENDANT'S MEMORANDUM
IN SUPPORT OF DISCOVERY**                                                                                                      **6**

messages unequivocally states to law enforcement that Mr. Wynne is not her pimp and she is not a victim of human trafficking, *Brady* evidence undoubtedly exists which must be produced.

Rule 16 of the Federal Rules of Criminal Procedure "grants criminal defendants a broad right to discovery," *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010), and requires the Government to turn over to the defense all documents and objects that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). It also requires the Government to disclose the defendant's oral statements (Rule 16(a)(1)(A)), "any relevant written or recorded statement by the defendant" (Rule 16(a)(1)(B)), and "the results or reports of any physical or mental examination and of any scientific test or experiment" (Rule 16(a)(1)(F). Rule 16 imposes a continuing duty to disclose relevant information promptly" upon request (Rule 16(c)).

Information is subject to discovery under these provisions of Rule 16 if it is "within the government's possession, custody, or control." *See, e.g.*, Fed. R. Crim. P. 16(a)(1)(B)(i), (E). Here, the Government and the probation officer clearly have control over the relevant SFPD records in addition to those in the custody of federal agents, given the joint nature of the investigation and the fact that the Government has already provided some discovery from the SFPD. The government cannot pick and choose which report they seek to provide to the defendant while leaving the remaining relevant discovery materials conveniently one mile away from the federal building.  This much is clear - such gamesmanship reeks of stalling while the government and its federal and state partners are investigating the defendant and violating his due process rights in this Form 12 proceeding.

The Government's duty to produce information under *Brady* extends in this case to information in the possession, custody, or control of the SFPD in addition to federal agencies." When federal and state agencies cooperate extensively on a joint investigative task force, the state agencies may be deemed to be 'agents' of the federal government such that their knowledge of exculpatory information

**DEFENDANT'S MEMORANDUM
IN SUPPORT OF DISCOVERY** 7

should be imputed to federal prosecutors." *United States v. Cerna*, 633 F. Supp. 2d 1053, 1059 n.* (N.D. Cal. 2009). In addition, the Ninth Circuit has held that where a federal prosecutor uses a local police officer as a "lead investigating officer," *Brady* applies to exculpatory information in the possession of the local police. *United States v. Price*, 566 F.3d 900, 903 (9th Cir. 2009); *see Cerna*, 633 F. Supp. 2d at 1059.

The SFPD became the "lead investigating officer" in this Form 12 proceeding. Given this, the supporting case law, the Constitution and Mr. Wynne's due process rights, he requests that the Court order that the government through the probation officer or through the U.S. Attorney's Office produce discovery in this Form 12.

December 10, 2024                                            Respectfully submitted,

                                                             */s/ Gail Shifman*
                                                             _____
                                                             GAIL SHIFMAN
                                                             Attorney for Defendant
                                                             RICCI LEE WYNNE