ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ERIC CHENG (CABN 274118)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Eric.Cheng@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 19-CR-00120 CRB (SK) |
|     Plaintiff, | **UNITED STATES' MEMORANDUM REGARDING DISCOVERY AND DETENTION** |
|   v. | Re: Dkt. Nos. 56, 59 |
| RICCI LEE WYNNE, | |
|     Defendant. | |

## I.    INTRODUCTION

Defendant Ricci Lee Wynne, a 39-year-old man from San Francisco, appears before this Court in connection with a petition to revoke Defendant's supervised release ("Form 12") by the United States Probation Office ("Probation"). Defendant seeks discovery regarding the alleged violations, and the United States seeks his detention.

Regarding discovery, following this Court's issuance of the parties' agreed-upon protective order on Friday, December 13, the United States produced materials to the defense that were requested from San Francisco (including multiple police incident reports from SFPD and other agencies, a case chronology, a victim interview transcript, and photographs, among other things), which should address Defendant's requests at this juncture. Turning to the issue of detention, the facts alleged in these

reports—including Defendant's contact and sex abuse of multiple child victims (as young as 12–14 years old) and hands-on production of child sexual abuse material (CSAM)—demonstrate that Defendant poses a tremendous danger to the community.  Pursuant to Federal Rules of Criminal Procedure 32.1 and 46(d), which incorporates 18 U.S.C. § 3143(a)(1), "the ***burden of establishing by clear and convincing evidence*** that [Defendant] will not flee or pose a danger to any other person or to the community ***rests with [Defendant]***"—and it is not a close call here.  Fed. R. Crim. P. 32.1(a)(6) (emphasis added); *see also* 18 U.S.C. § 3143(a)(1).  Defendant should be detained pending revocation proceedings.

## II. CRIMINAL HISTORY AND UNDERLYING FEDERAL CASE

From age 20 in 2006 to age 27 in 2013, Defendant Ricci Lee Wynne accumulated a lengthy criminal history around Northern California.  (Dkt. No. 40, Presentence Investigation Report ("PSR") ¶¶ 34–43.)  Defendant was convicted of crimes approximately ten times, including one felony conviction for first-degree burglary involving a knife assault on a victim (in 2012) and four felony controlled substance offenses.  (PSR ¶¶ 41, 37, 40, 42, 43.)

In 2018, police officers received a report that defendant was armed and involved in human trafficking ("pimping") and narcotics trafficking.  (PSR ¶ 7–8.)  Upon monitoring Defendant's account on the social media platform Snapchat, officers observed videos of Defendant marketing cocaine in San Francisco, including a video post offering a "cocaine buffet," along with videos depicting three women in a skyrise apartment building.  (PSR ¶ 8.)  After further investigation, police obtained a warrant and on January 10, 2019, after police officers approached Defendant and identified themselves as police, defendant began running.  (PSR ¶ 9–10.)  After a short foot pursuit, a search of Defendant's person revealed, among other things, $6,185 in U.S. currency, a ski mask, and marijuana.  (PSR ¶ 11.)  Officers then searched Defendant's residence in San Francisco pursuant to a search warrant.  (PSR ¶ 12.)  There, officers located more than 100 grams of cocaine, marijuana, a digital scale, and a loaded Glock pistol that was later determined to be stolen out of the city of Fremont.  (PSR ¶¶ 12–15.)  Officers also found two females there—***one of which was an underage juvenile girl***.  (PSR ¶ 12–14.)

On March 14, 2019, Defendant was charged in an indictment with one count of violating 18 U.S.C. § 922(g)(1), felon in possession of a firearm, and one count of violating 21 U.S.C. § 841(a)(1)

and (b)(1)(C), possessing cocaine with intent to distribute, and arrested on a federal warrant on April 4, 2019.  (PSR p. 2, ¶ 1.)

At a detention hearing on June 24, 2019, the Honorable Jacqueline Scott Corley found Defendant to be a danger to the community and ordered him remanded to custody.  Dkt. No. 11.  Defendant pleaded guilty on June 25, 2019.  (PSR ¶ 2.).  Defendant remained in federal custody approximately 26 months from his arrest on the federal warrant until his release on June 10, 2021.  Dkt. No. 38.  The Honorable Charles R. Breyer sentenced Defendant to time served on December 15, 2021.  Dkt. No. 44.

### III.   FORM 12 PROCEEDINGS

Defendant began his term of supervised release on December 15, 2021.  Dkt. No. 53 at 1.  While on supervised release, Defendant sought and received approval for multiple out-of-district travel requests, including international trips to Puerto Vallarta, Mexico (April–May 2024), Dkt. No. 49, and Tokyo, Japan (October 2024), Dkt. No. 51, among other out of state trips.  Dkt. No. 53 at 3.

**Charge One** alleges Defendant committed another federal, state, or local crime less than 3 months into his term of supervised release based on allegations set forth in SFPD report 240-729-010 (produced at US-RLW-1000001 – US-RLW-1000007), in which Defendant began sexual contact with a then-14-year old girl (Minor Victim 1) and sexually assaulted her after she turned 15.  Dkt. No. 53 at 2.

**Charge Two** alleges that Defendant committed another federal, state, or local crime on or about November 25, 2024 based on allegations set forth in SFPD report 240-729-179 (produced at US-RLW-2000001 – US-RLW-2000010), in which Defendant's electronic devices showed his involvement in "pimping" and "pandering by procuring," and SFPD's search of his residence revealed $79,900 in U.S. currency.  Dkt. No. 53 at 3.

**Charge Three** alleges that Defendant failed to follow the instructions of the probation officer, after Defendant received approval to travel to Miami, Florida between November 19–23 but changed his flight and returned a day later without the approval of his Probation Officer.  Dkt. No. 53 at 3.

During the December 4, 2024 hearing before this Court, the United States and Probation proffered additional evidence from SFPD's ongoing investigation showing that Defendant had himself produced child sexual abuse materials (CSAM) with at least one child victim, Minor Victim 2 (anticipated **Charge Four** to an amended petition by Probation).  Dkt. No. 56.  Additional police

reports, including a supplemental SFPD report 240-729-179 dated December 3, 2024 (produced at US-RLW-4000001 – US-RLW-4000005), allege that Defendant's electronic devices contained explicit child sexual abuse material (CSAM) recorded less than a year into Defendant's term of federal supervised release (from October to December 2022) that depict Defendant in multiple types of sex acts with a juvenile victim that appears to the officer to be in her early teens at the underdeveloped puberty stage. An additional agency's report (US-RLW-4000029 – US-RLW-4000038) provides visual confirmation of the victim's identity and age by a School Resource Officer personally familiar with the victim—verifying that Defendant began speaking to Minor Victim 2 when she was age 12 and recorded the child sexual abuse material (CSAM) when she was age 13 (in middle school in eighth grade).

## IV.   DISCOVERY PRODUCTION

Regarding discovery, the United States has produced materials that it and Probation requested from San Francisco (including multiple police incident reports from SFPD and other agencies, case chronologies, a victim interview transcript, and photographs, among other things), pursuant to the parties' agreed-upon protective order (Dkt. No. 63). The production of these materials should address Defendant's requests.

As an initial matter, these materials pertain to an active investigation by the SFPD, and primarily arise out of devices seized only three weeks ago when Defendant returned from a trip to Miami, Florida in violation of his conditions of supervised release. Defendant wrongly asserts that Defendant's devices were seized at the "behest of the United States Probation Office," as the search was initiated by SFPD, who contacted Probation to clarify the terms of his supervised release and scope of the applicable search conditions before then seizing his devices. Dkt. No. 59 at 3. The United States and Probation have needed to request and receive discovery materials from SFPD relevant to these Form 12 proceedings as the SFPD investigation has proceeded; this is not a situation where "a federal prosecutor uses a local police officer as a 'lead investigation officer'" as Defendant seems to suggest. Dkt. No. 59 at 8.

In any event, the United States disputes but need not address all of Defendant's allegations in his motion, as Defendant ultimately acknowledges that the requested discovery materials must be obtained by "a request for copies of SFPD documents [that] produces results." Dkt. No. 59 at 4–5. Given the subject matter of the alleged violations and contents of Defendant's electronic devices, the parties

required a protective order regarding "alleged child pornography" that set forth specific protections for the produced materials and a process for physically inspecting information from Defendant's electronic devices at a government facility given the presence of child sexual abuse materials (CSAM), among other things. Dkt. No. 59 at 4, n. 1. Such an order was entered by this Court pursuant to the parties' stipulation on Friday, December 13. Dkt. No. 63.

The United States requested, received, processed, and since produced on the morning of Saturday, December 14 nearly all of the discovery materials Defendant identified in his motion, and these materials establish probable cause for the alleged supervised release violations (including Charges One through Three and anticipated Charge Four): "other incident reports" (Dkt. No. 59 at 3), a "Chronology" (Dkt. No. 59 at 4), and a "supplemental report" (Dkt. No. 59 at 4) relevant to Probation's review of "videos of child pornography [that] had been viewed on seized phones without producing any reports" (Dkt. No. 59 at 4), among many other items.[1] The United States is aware of its discovery obligations and will continue to review and produce material as it is generated and received.

## V. DEFENDANT MUST BE DETAINED

This Court should find that Defendant presents both a danger to the community and a risk of flight, and order Defendant detained pending revocation proceedings. The relevant standard for detention in a supervised release revocation proceeding is set forth in Federal Rules of Criminal Procedure 32.1 and 46(d), which incorporates 18 U.S.C. § 3143(a)(1), making clear that "the burden of establishing by clear and convincing evidence that [Defendant] will not flee or pose a danger to any other person or to the community rests with [Defendant]." Fed. R. Crim. P. 32.1(a)(6) (emphasis added); *see also* 18 U.S.C. § 3143(a)(1).

First and most significantly, Defendant presents a tremendous danger to the community. As set forth in Charge One and anticipated Charge Four of the Form 12, within months of Defendant's release from federal custody in 2021, he began almost immediately in 2022 contacting children as young as 12 or 13 and then sexually abusing them. Evidence recently identified by investigators shows Defendant not only sexually abused children, but further videorecorded many of his sexual acts with them,

---

[1] Body-worn camera footage has also been requested from SFPD; the request remains pending.

effectively producing child sexual abuse material (CSAM) also known as child pornography. This child sexual abuse material remained stored on Defendant's active cell phone that was seized by investigators just three weeks ago, as Defendant returned from interstate travel from Miami, Florida. What's more, the danger Defendant presents to minor girls is not completely new as his underlying federal case concerning an illegal firearm and narcotics trafficking arose out of an investigation also involving human trafficking ("pimping"), in which an underage girl was found at Defendant's residence with other contraband during execution of a search warrant. (PSR ¶ 12–14.) Defendant's established track record of sexually abusing children demonstrates he should be detained. Moreover, as set forth in Charge Two, that Defendant continues to engage in other "pimping" activity as of three weeks ago confirms that his violative conduct and behavior likely remains unchanged.

Second, Defendant is also a risk of flight. While on federal supervised release, Defendant has engaged in significant travel, including international travel to locations like Mexico and Japan, as well as cross-country trips to locations like Miami, Florida. Dkt. Nos. 49, and 51. A search of Defendant's residence less than three weeks ago revealed $79,900 in U.S. currency, showing he is not only well-traveled but has the ability and means to flee. Dkt. No. 53 at 3. Given the allegations of this case, Defendant faces not only potential consequences from the revocation of his federal supervised release, but potential exposure from other additional charges. *See, e.g.*, 18 U.S.C. § 2251(a), (e) ("Sexual exploitation of children … Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years"). Finally, in the underlying 2019 federal case, Defendant fled when approached by police. (PSR ¶ 9–11.)

At bottom, the record shows that Defendant presents both a grave danger to the community and a risk of flight, and he cannot overcome his burden to establish by clear and convincing evidence the contrary. This Court should order him detained.

DATED: December 15, 2024                    Respectfully submitted,

                                            ISMAIL J. RAMSEY
                                            United States Attorney


                                                 /s/
                                            ERIC CHENG
                                            Assistant United States Attorney